IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN JEFFREY WOODS, | ) |
| Plaintiff, | ) Case No. 7:22-cv-00477 |
| v. | ) **MEMORANDUM OPINION** |
| FRANK DULL and YOUNG, | ) By:   Hon. Thomas T. Cullen |
| Defendants. | ) United States District Judge |

Plaintiff John Jeffrey Woods ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil rights action against Defendants Frank Dull and "Young" (collectively, "Defendants"), officials at Middle River Regional Jail where Plaintiff was housed during the events giving rise to his suit, under 42 U.S.C. § 1983. It is now before the court on a motion to dismiss filed by Defendants. For the reasons discussed more fully below, Plaintiff's complaint fails to state a claim and must be dismissed.

## I.   BACKGROUND

At all relevant times, Plaintiff was an inmate at Middle River Regional Jail in Staunton, Virginia. According to his amended complaint (ECF No. 7), Plaintiff asked Defendant Dull "over and over" to have a rape kit performed on him, but Dull "failed to do so." (*Id.*) According to Plaintiff, it is a "rule of any Jail-Prison to do kit when asked," and although Plaintiff "ask[ed] 9 different COs for rape kit to be done," it was not. (*Id.*) Plaintiff explains that he requested as much because his "back side was ripped open by something" and, although he "ask[ed] 9 different COs for rape kit to be done," it never was. (*Id.*)

Moreover, as "Young is over the jail he would be [the] one to say to [do] this by law." (*Id.*) Plaintiff seeks $100,000 in damages.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (cleaned up). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III. ANALYSIS

In their motion, Defendants contend that Plaintiff has no right to the investigatory methods of his choice; in fact, he has no constitutional right to the investigation of a crime at all. Absent a constitutional or statutory right, a claim will not lie under § 1983.

Section 1983 imposes liability on any person who, acting under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff 'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (quoting *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011)). "Section 1983 'is not itself a source of

substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

The law is well-settled that "[t]here is no respondeat superior liability under § 1983," *Johnson v. Potomac Highlands Reg'l Jail*, No. CIV.A 5:06CV1, 2007 WL 1258879, at *2 (N.D.W. Va. Apr. 30, 2007); accordingly, a plaintiff must show "that the official charged acted personally in the deprivation of the plaintiff['s] rights," *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002).[1]

---

[1] Of course, there are circumstances under which a supervisor will be liable:

> First, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Johnson*, 2007 WL 1258879, at *2 (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Second, "when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible." *Id.* (citing *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133 (4th Cir. 1982)). Third, "a supervisor may be liable under § 1983 if the following elements are established: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

*Wilson v. United States*, 332 F.R.D. 505, 518 (S.D.W. Va. 2019).

## A.

In reviewing Plaintiff's complaint, it is necessary to separate the defendants to determine whether a claim is stated against either.[2] Turning first to Dull: giving Plaintiff's complaint the most lenient interpretation, it appears he requested that a rape kit be performed when he discovered some sort of trauma to his rear end that led him to believe that he had been raped. Plaintiff *does not* allege that he claimed he was raped or that Dull refused to initiate an investigation into any such allegation. Rather, and apparently in a vacuum,[3] Plaintiff asked that a rape kit be performed on him, but Dull refused his request.

Given Plaintiff's apparent[4] references to the "PREA" and a "rape" kit, the court construes his claim as a request that certain investigatory techniques be employed to confirm or dispel his belief that he had been sexually assaulted.[5] This allegation cannot support a

---

[2] It is important to note that Plaintiff does *not* allege that either of the defendants failed to protect him from a sexual assault (if any even occurred), or that they interfered with his access to medical treatment for any injuries he may have incurred in such an assault.

[3] Although not relevant to this motion, Plaintiff's later filings appear to illuminate what occurred. Apparently, two days prior, Plaintiff had been to the hospital and his rear end was biopsied and "the lady said it was abnormal . . . ." (ECF No. 32.) Plaintiff returned to the jail and was placed in segregation. He "was there 2 nights and the third day [he] w[o]ke up with [his] backside worse than it was . . . ." (*Id.*) He spoke with Dull "and about 7 or 8 officers about what was going on . . . ." (*Id.*) Based presumably on this history and Plaintiff's complaint, Dull moved Plaintiff from segregation to medical. (*Id.*)

[4] Plaintiff's amended complaint refers to "prau"; the court assumes, given the nature of his claims, that Plaintiff was referring to "PREA," the Prison Rape Elimination Act.

[5] The other, admittedly far less tenable, interpretation is that he requested medical attention when he observed some sort of trauma to his rear end. But given the repeated usage of the words "rape kit," the only supportable interpretation of Plaintiff's claims is that he believed he had been sexually assaulted as requested it be investigated a certain way.

But the court must concede that Plaintiff's later filings obscure the nature of his claims. In his complaint, he says they he had a rape kit performed "two day[s] before" and "they found tairing [*sic*] back there . . . ." (Compl. pg. 4.) His subsequent filings (which are not sworn and are not considered in resolving the present motion, *see supra* n.2) indicate that a "biopsy" was done several days before. Given these assertions, Plaintiff may have intended to assert a claim that he was denied a request to see a physician when whatever issue he

§ 1983 claim against Dull. Even if Plaintiff had alleged that he was raped,[6] he still would not have had a constitutional entitlement to a rape kit. *See, e.g.*, *Salami v. Mich. State Police Forensic Sci. Lab.*, No. 2:18-CV-13282, 2019 WL 446979, at *2 (E.D. Mich. Feb. 5, 2019) (rejecting claim based on state lab's failure to preserve the sexual assault kit performed on the plaintiff); *Johnson v. Ruiz*, No. 3:11-cv-542 JCH, 2012 WL 90159, at *3 (D. Conn. Jan. 10, 2012) ("Research has revealed no constitutional or statutory requirement that a rape test kit be used on an alleged rape victim."); *Brown v. Parnell*, No. CIV.A 5:09CV-P159-R, 2010 WL 1418735, at *5 (W.D. Ky. Apr. 7, 2010) (rejecting claim when the plaintiff contended a rape kit was not performed).

Plaintiff also alleges that it "is a rule of any jail" that a rape kit must be performed when requested. (Am. Compl.) It is well-settled, though, that "a prison-policy violation that does not result in a constitutional violation does not create a viable claim under section 1983." *Watkins v. Davis*, No. 5:21-CT-3178-D, 2021 WL 6010350, at *3 (E.D.N.C. Dec. 20, 2021) (citing *Danser v. Stansberry*, 772 F.3d 340, 348–49 (4th Cir. 2014)).

Finally, Plaintiff's apparent references to the PREA are also unavailing. Insofar as Plaintiff's complaint can be read to claim that the denial of his request that a rape kit be performed violated the PREA, that statute "does not create a right of action that is privately enforceable by an individual civil litigant." *LeMasters v. Fabian*, Civil No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009). Moreover, although the regulations applicable to the PREA do require that prisons "offer all victims of sexual abuse access to

---

had was exacerbated. But that is not what his complaint says, and the court is bound to review those allegations, not its best guess of what Plaintiff may have meant to say.

[6] Such a scenario is unlikely given that he admits that he was in segregation at the time.

forensic medical examination, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate," 28 C.F.R. § 115.1(c), that regulation does not require a rape kit on demand. *Accord Baynes v. United States*, No. 1:15-CV-1604, 2016 WL 4492807, at *12 (E.D. Va. Aug. 25, 2016) (finding that the allegation that a plaintiff "was injured by the [Bureau of Prisons] medical staff's failure to arrange for a rape kit . . . is barred by the discretionary function exception" to the Federal Tort Claims Act's waiver of sovereign immunity). Even assuming that the failure to offer a rape kit under proper circumstances would be cognizable under § 1983, Plaintiff's allegations are insufficient to establish the applicability of the regulations.

For all these reasons, Plaintiff's complaint does not state a claim against Dull, and the motion to dismiss will be granted as to him.

**B.**

The allegations against Defendant Young are even more sparse that those against Dull. Plaintiff alleges that because "Young is over the jail[,] he would be [the] one to say" to perform the rape kit when requested "by law." (Am. Compl. ¶ E.2.) Setting aside that Young must have engaged in some action *personally* that resulted in the deprivation of Plaintiff's rights, *Wilcox*, 877 F.3d at 170, Plaintiff does not allege that Young was ever made aware of his request. Plaintiff says he asked nine officers for the rape kit, but he never alleges that he specifically asked Young.

Liability against Young could also be established if one of his subordinates acted "pursuant to an official policy of custom for which [Young] is responsible." *Johnson*, 2007

WL 1258879, at *2. But Plaintiff's complaint contains no such allegation. In fact, he claims just the opposite—that prison policy *required* that a rape kit be performed on demand.

And finally, under *Shaw v. Stroud*, a plaintiff can establish a supervisor's liability by establishing that "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'severe and unreasonable risk' of constitutional injury to citizens like the plaintiff . . . ." 13 F.3d 791, 799 (4th Cir. 1994). As noted above, however, there is no allegation that Young was aware that any of this was going on. Absent that allegation, Plaintiff's claim against Young must fail.

Moreover, when making a claim under *Shaw*, a plaintiff "cannot satisfy [his] burden of proof by pointing to a *single incident or isolated incidents* . . . ." *Oliver*, 250 F. Supp. 2d at 599. Instead, "supervisory liability may only be imposed where 'there is a history of widespread abuse.'" *Id.* (quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1980)). Again, Plaintiff's complaint is completely devoid of any allegations to suggest that there is a "widespread history of abuse" such that Young may be liable absent his personal involvement.

For all these reasons, Plaintiff has failed to state a claim against Young, and the motion to dismiss must be granted.

## IV. CONCLUSION

Plaintiff's complaint is deficient in several material respects and must be dismissed.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 25th day of September, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE